UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NEW YORK LIFE GROUP INSURANCE
COMPANY OF NY,

                              Plaintiff,

    -against-                                          1:21-CV-00346 (LEK/ATB)

HENDRIKA MAXWELL, *et al.*,

                              Defendants.

## MEMORANDUM-DECISION AND ORDER

On March 25, 2021, Plaintiff New York Life Group Insurance Company of NY ("NY Life") commenced this interpleader action pursuant to Federal Rule of Civil Procedure 22 and 29 U.S.C. § 1132, seeking discharge from all liability in connection with a life insurance plan ("Plan") previously issued to Dreena Verhagen ("Decedent"). Dkt. No. 1 ("Complaint"). NY Life named the following Defendants as potential claimants to the Plan's proceeds ("Plan Benefits"): Hendrika Maxwell, Decedent's sister; Samantha Kantola, the Voluntary Administrator of the Estate of Randi S. Hongisto, Decedent's friend;[1] Erin Lynch, Decedent's friend; Heidi Verhagen, Decedent's sister; Jessica Dulong, Decedent's niece; Scott Dulong, Decedent's nephew; James Verhagen, Decedent's brother; Shirley A. Davis, Decedent's sister; and Peter Verhagen, Decedent's brother.[2] Compl. ¶¶ 2–10. Because NY Life itself "makes no

---

[1] Hongisto died on December 7, 2020. Kantola was subsequently appointed Voluntary Administrator of Hongisto's Estate. Compl. ¶¶ 31–32. Kantola has not filed an answer to the Complaint. See generally Dkt. On September 6, 2022, during a telephone conference, Defendant Erin Lynch advised United States Magistrate Judge Andrew T. Baxter that Kantola did not intend to participate in this action. See Dkt., Text Minute Entry, Sept. 6, 2022.

[2] To date, Peter Verhagen has not filed an answer to the Complaint. Dkt. No. 92-2 ("Horbatiuk Declaration") ¶ 10; see generally Dkt.

claim to the Plan Benefits other than payment of its reasonable attorney's fees and costs," NY Life initiated this action so that "this Court determine to whom the Plan Benefits should be paid." Compl. ¶ 36.

On July 9, 2021, the Court granted NY Life's Motion for Interpleader Deposit, Dkt. No. 20 ("Order—Motion for Deposit"), and on August 3, 2021, NY Life deposited the Plan Benefits amount plus applicable interest in the Court Registry Investment System, Dkt. No. 24 ("Interpleader Deposit"). On May 11, 2022, NY Life filed a Motion for Interpleader Relief to Dismiss, "request[ing] that it [and its associated entities[3]] be discharged from all liability, and that the Defendants be enjoined from raising any Claims against NY[] [Life] or these other entities regarding the [Plan] [B]enefits." Dkt. No. 92-1 ("Motion") at 2.[4] For the reasons set forth below, the Court grants NY Life's request that it be discharged from the action, but the Court denies NY Life's request for injunctive relief.

---

[3] These "associated entities" include Centene Company of New York, LLC ("Centene") and the Plan itself. Mot. at 2.

[4] In the Motion, NY Life also states that it "claims no interest in the Plan Benefits except for the reimbursement of its reasonable costs and fees." Dkt. No. 92-1 ("Motion") at 5. However, in its Notice of Motion, NY Life does not expressly move the Court for attorney's fees and costs. See Dkt. No. 92 ("Notice of Motion"). While some courts have ruled on an interpleader-plaintiff's request for costs and fees without the plaintiff first expressly *moving* for them, see, e.g., Sun Life Assur. Co. of Canada v. Diaz, No. 14-CV-01685, 2015 WL 1826088, at *6–7 (D. Conn. Apr. 22, 2015) (ruling on requests raised in the plaintiff's interpleader complaint, including a request for costs and fees, without plaintiff expressly moving for them), this Court declines to do so given the pro se status of the claimants at the time they filed their responses to the Motion. None of the claimants' responses to the Motion makes any reference to NY Life's request for costs and fees, which suggests that none of them were aware such costs and fees were even at issue in the Motion when they responded to it.

2

I.   BACKGROUND

    A.  Factual Background

The following facts are undisputed, except where otherwise noted. Decedent was a former employee of Centene and a participant in the Plan, Compl. ¶ 13, which provided for life insurance coverage in the amount of $138,000, id. at ¶ 23. The Plan is an employee welfare benefit plan regulated by the Employee Retirement Income Security Act ("ERISA"). Id. ¶ 13. The Plan is sponsored by Centene and funded by a group life insurance policy initially issued by Cigna Life Insurance Company of New York ("CIGNA").[5] Id. The Plan provides, in pertinent part, that:

**Change of Beneficiary**

> You may change your beneficiary at any time by giving us a written notice or notice by any other electronic or telephonic means authorized by us. The beneficiary's consent is not required for this or any other change which you may make unless the designation of beneficiary is irrevocable.
>
> No change in beneficiary will take effect until the request form is received by us. When the request form is received, it will take effect as of the date of the form. If you die before the request form is received, we will not be liable for any payment that was made before receipt of the request form.

Dkt. No. 1-1 ("Compl. Ex. A") at 27; Compl. ¶ 18.

The Plan also sets forth to whom benefits should be paid in the event that a covered employee dies with no designated beneficiary:

---

[5] "On December 31, 2020, [NY Life] acquired [CIGNA] resulting in a change to [CINGA]'s corporate ownership." Compl. ¶ 14. CIGNA changed its name to NY Life effective March 11, 2021. Id. In their answers to the Complaint, James Verhagen, Davis, Heidi Verhagen, Scott Dulong, Jessica Dulong, and Maxwell each deny having knowledge as to the allegation regarding the change in corporate ownership. Dkt. Nos. 26–31 ("August 27, 2021, Answers") ¶ 2; see Compl. ¶ 14.

**To Whom Payable**

> Death benefits for you will be paid to the beneficiary named in our records, if any, at the time of payment. If there is no named beneficiary or surviving beneficiary, or if you die while Disability Benefits are payable to you, we may, at our option, make direct payment to any of the following:
>
> 1. spouse of the Insured;
> 2. child or children of the Insured;
> 3. parents of the Insured;
> 4. sisters or brothers of the Insured; or
> 5. the estate of the Insured.

Compl. Ex. A at 27; Compl. ¶ 19.

Decedent died on March 30, 2020. Compl. ¶ 20. Following Decedent's death, Hongisto emailed a Beneficiary Designation Form ("Designation Form") to CIGNA allegedly signed by Decedent on March 11, 2020. Id. ¶ 21; but see Dkt. Nos. 26–31 ("August 27, 2021, Answers") ¶ 2 (James Verhagen, Davis, Heidi Verhagen, Scott Dulong, Jessica Dulong, and Maxwell "den[y] knowledge or information sufficient to form a belief as to the allegations contained in" ¶ 21 of the Complaint). According to the Designation Form, the Plan Benefits were to be distributed accordingly: Maxwell to receive a 30% share, Hongisto to receive a 30% share, Lynch to receive a 20% share, Heidi Verhagen to receive a 10% share, Jessica Dulong to receive a 5% share, and Scott Dulong to receive a 5% share. Compl. ¶ 21; but see August 27, 2021, Answers ¶ 2.

Following the submission of the Designation Form, Heidi Verhagen reached out to CIGNA and disputed the authenticity of the Designation Form. Compl. ¶ 22. By correspondence dated July 22, 2020, CIGNA advised Hongisto, Lynch, Jessica Dulong, and Scott Dulong their claims were denied based on the opinion of a handwriting expert in CIGNA's Special Investigation Unit who determined that Decedent's signature was not valid. Id. ¶¶ 24–27; see Dkt. Nos. 1-4–1-7 ("Compl. Exs. D–G"). On August 16, 2020, Hongisto appealed CIGNA's

denial letter directly to CIGNA, Compl. ¶ 28; see Dkt. No. 1-8 ("Compl. Ex. H"); but some Defendants deny having knowledge of, or information sufficient to form a belief about, Hongisto's appeal, see August 27, 2021, Answers ¶ 2.

After CIGNA's handwriting expert opined that Decedent's signature on the Designation Form was not valid, CIGNA, by letter dated July 22, 2020, requested that Heidi Verhagen prepare a Preference Beneficiary Affidavit ("Preference Affidavit") in accordance with the provisions of the Plan. Compl. ¶ 29; see Dkt. No. 1-9 ("Compl. Ex. I"); but see August 27, 2021, Answers ¶ 2 (James Verhagen, Davis, Heidi Verhagen, Scott Dulong, Jessica Dulong, and Maxwell "den[y] knowledge or information sufficient to form a belief as to the allegations contained in" ¶ 29 of the Complaint). The provisions of the Plan set forth to whom benefits would be payable in the event that there were no designated beneficiaries at the time of Decedent's death. Compl. ¶ 29; see Compl. Ex. I. The Preference Affidavit submitted to CIGNA on July 29, 2020, set forth the names of the five surviving siblings of the Decedent: Heidi Verhagen; James Verhagen; Davis; Maxwell; and Peter Verhagen. Compl. ¶ 30; see Dkt. No. 1-10 ("Compl. Ex. J"). Each of the five surviving siblings listed on the Preference Affidavit would receive equal shares of 20%. Compl. ¶ 35.

Before CIGNA administered the Plan Benefits, NY Life acquired CIGNA on December 31, 2020, "resulting in a change to [CIGNA]'s corporate ownership." Compl. ¶ 14; see also Mot. at 5. After NY Life reviewed the ongoing dispute, it found that it could not "determine the proper beneficiaries of the Plan Benefits at issue without risking exposure of itself, the Plan, and Centene to multiple liabilities." Compl. ¶ 33.

**B. Procedural History**

On March 25, 2021, NY Life commenced this action by filing a Complaint in interpleader, see Compl., and sought wavier of service from all Defendants to avoid the expense of personally serving them. Dkt. No. 2 ("Summons"). All Defendants signed and returned waivers of service in a timely manner. Dkt. No. 4–12 (collectively, "Waivers of Service"). On June 25, 2021, NY Life filed a motion for interpleader deposit pursuant to Rule 67 of the Federal Rules of Civil Procedure and Local Rule 67.1 to deposit the Plan Benefits in dispute, plus any applicable interest, into the registry of the Court. Dkt. No. 19 (citing Fed. R. Civ. P. 67 and L.R. 67.1). On July 9, 2021, this Court granted the motion for interpleader deposit, see Order—Motion for Deposit, and on August 3, 2021, the funds were deposited into the registry of the Court, see Interpleader Deposit.[6]

On August 27, 2021, James Verhagen, Heidi Verhagen, Scott Dulong, Jessica Dulong, Davis, and Maxwell filed virtually identical answers to the Complaint. See August 27, 2021, Answers. On September 13, 2021, Lynch submitted an Answer to the Complaint, in which she stated that based on messages between herself and Decedent, she is entitled to her portion of the proceeds. Dkt. No. 61 ("September 13, 2021, Answer"). Following Lynch's Answer, on September 27, 2021, Lynch submitted a Request for Subpoena for Decedent's medical records "to show diagnosis of [Decedent's] neurological disorders . . . to refute the conclusion that [Decedent's] signature was forged." Dkt. No. 64 ("First Subpoena Request"). The Court granted this request by text order on October 8, 2021.[7] Dkt. No. 66. On December 27, Lynch submitted a

---

[6] The amount deposited into the court registry was one hundred and thirty-eight thousand, two hundred and ninety-two dollars and forty-nine cents ($138,292.49). Horbatiuk Declaration ¶ 6.

[7] On December 8, 2021, Jessica Dulong, Maxwell, James Verhagen, Davis, Heidi Verhagen, and Scott Dulong, submitted letters opposing the granting of the subpoena request. Dkt. Nos. 67–72. The Court stated in a text order on December 9, 2021, that "[i]f, based on a review of any [of

second Request for Subpoena to recover Facebook messages from Decedent to Lynch to show the "authenticity of the messages." Dkt. No. 80.[8] The Court granted this second request by text order on January 3, 2022, "subject to the condition requested by other defendants that any documents be produced, in the first instance, to the Clerk of the Court, to then be made available to the parties." Dkt. No. 88.

NY Life now moves to be discharged from the action through interpleader relief because it is at risk of exposure to multiple liabilities from claims to the Plan Benefits, Mot. at 2, and seeks to have Defendants "enjoined from commencing or prosecuting any action related to the Plan," id. at 10. On May 20, 2022, Heidi Verhagen, James Verhagen, Davis, and Maxwell (collectively, "Opposing Parties"), opposed NY Life's Motion. See Dkt. Nos. 93–96 (collectively, "Oppositions"). The Opposing Parties claim in their virtually identical Oppositions that NY Life failed to follow its own policies and procedures, and therefore, should not be discharged. Opp'n's. at 1. Furthermore, the Opposing Parties claim that because Kantola and Peter Verhagen failed to file answers, neither party should receive any portion of the plan.[9] Id. at 2. On June 16, 2022, Lynch submitted an untimely letter to the court stating that she does not oppose NY Life's motion to be discharged from the case. Dkt. No. 100 at 2. In a text order on June 21, 2022, the Court "acknowledge[d] Defendant Lynch[']s intent not to oppose the Motion,

---

the] medical records [received through Lynch's subpoena], the defendants wish to assert substantive grounds for precluding [their] use, in this action . . . they are granted leave to do so." Dkt. No. 73.

[8] On December 29, 2021, Jessica Dulong, Maxwell, James Verhagen, Davis, Heidi Verhagen, and Scott Dulong submitted objections to both subpoena requests. Dkt. No. 82–87.

[9] This argument need not be resolved to rule on the present Motion, but Kantola and Peter Verhagen are on notice that "[t]he failure of a named interpleader defendant to answer the interpleader complaint and assert a claim to the *res* can be viewed as forfeiting any claim of entitlement [to it]." Gen. Accident Group v. Gagliardi, 593 F. Supp. 1080, 1089 (D. Conn. 1984).

despite the untimeliness of her notification" because of her status as a pro se litigant. Dkt. No. 101. On September 27, 2022, Christian J. Soller appeared in this case on behalf of Davis, Jessica Dulong, Scott Dulong, Maxwell, Heidi Verhagen, and James Verhagen. Dkt. No. 105.[10]

## II. DICUSSION

### A. Subject Matter Jurisdiction

There are two ways in which federal courts acquire subject matter jurisdiction over interpleader actions: "statutory interpleader" and "rule interpleader." Sun Life, 2015 WL 1826088, at *2. Statutory interpleader actions arise under 28 U.S.C. § 1335 ("Section 1335"), which provides

> district courts with original jurisdiction over any civil action of interpleader involving $500 or more if two or more adverse claimants of diverse citizenship claim, or may claim, to be entitled to the property at issue, and if the plaintiff has deposited the subject property into the registry of the court.

Sun Life, 2015 WL 1826088, at *2. Here, there are not two or more adverse claimants of diverse citizenship because all Defendants are residents of New York.[11] Therefore, Section 1335 does not apply to the present case.[12]

---

[10] The Court has concerns about one attorney representing both Decedent's siblings, and Decedent's niece and nephew, in the same action. As the factual background suggests, their claims to the contested Plan Benefits are adverse. See supra Section I.A.

[11] Kantola, the Voluntary Administrator of Hongisto's Estate, does not lay claim to the Plan Benefits, but even if she did, her South Carolina residence would not establish diverse citizenship. In 1988, Congress amended 28 U.S.C. § 1332 stating that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2); see also Geler v. Nat'l Westminster Bank USA, 763 F. Supp. 722 (S.D.N.Y. 1991). And "[t]he definition of citizenship is the same for the interpleader statute as for the general diversity statute." Geler, 763 F. Supp. at 726 n.5 (citing 28 U.S.C. § 1335(a)(1)).

[12] The district court in American Intern. Life Assur. Co. of New York v. Vasquez, No. 02-CV-0141, 2002 WL 31059296 (S.D.N.Y. Sept. 16, 2002), erroneously concluded that Section 1335 was satisfied despite the lack of diverse citizenship between the adverse claimants. Id. at *2. ERISA does not waive the diversity requirement of Section 1335. Rather, ERISA establishes

Rule interpleader actions, on the other hand, arise under Rule 22 of the Federal Rules of Civil Procedure. Rule 22 permits "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). However, "rule interpleader does not provide an independent basis for jurisdiction," Correspondent Servs. Corp. v. First Equities Corp. of Fla., 338 F.3d 119, 124 (2d Cir. 2003); therefore, a "plaintiff must plead and prove an independent basis for subject matter jurisdiction." Metro. Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007) (citations omitted).

Courts have found that "[c]laims brought under ERISA constitute a federal question and establish subject matter jurisdiction." Metro. Life Ins. Co. v. Carey, No. 16-CV-3814, 2017 WL 4351512, at *2 (E.D.N.Y. Sept. 29, 2017) (citing Metro. Life Ins. Co. v. Bigelow, 283 F.3d 436, 439–40 (2d Cir. 2002)). "29 U.S.C. § 1132, grants 'exclusive jurisdiction' to district courts over actions brought by fiduciaries under ERISA to 'obtain . . . appropriate equitable relief . . . without respect to the amount in controversy or the citizenship of the parties.'" Carey, 2017 WL 4351512, at *2 (citing 29 U.S.C. §§ 1132(a)(3), (e), (f)). "Equitable relief" includes interpleader relief under Rule 22. See Bigelow, 283 F.3d at 439–40 (citing Aetna, 223 F.3d at 1033–34 and Metro. Life Ins. Co. v. Marsh, 119 F.3d 415, 418 (6th Cir. 1997)). "Entities making discretionary decisions regarding eligibility for benefits in connection with administering employee benefit plans are fiduciaries under ERISA." Sun Life, 2015 WL 1826088, at *3.

Since NY Life exercises discretionary authority relating to the eligibility benefits under the ERISA-governed Plan, Compl. ¶ 15, the Court concludes that NY Life is an ERISA fiduciary with respect to Decedent's Plan. Additionally, NY Life is responsible for receiving beneficiary

---

federal jurisdiction over certain rule interpleader actions, which derive from Rule 22 of the Federal Rules of Civil Procedure, *not* Section 1335.

designation forms, correspondence regarding claims from beneficiaries, and paying claims under the Plan. See Compl. ¶¶ 21–22, 24–30, 37. Therefore, jurisdiction exists under 29 U.S.C. § 1132 because this action seeks rule interpleader relief by an ERISA fiduciary.

### B.  Interpleader Relief under ERISA

"Interpleader relief is appropriate where a stakeholder faces multiple claims against the same fund." Carey, 2017 WL 4351512, at *2 (citing Hartford Life Ins. Co. v. Simonee, No. 14-CV-7520, 2015 WL 8490998, at *2 (E.D.N.Y. Dec 10, 2015)). Courts conduct a two-step analysis when assessing the merits of an interpleader action under both "rule interpleader, as in this case, or under statutory interpleader." Sun Life, 2015 WL 1826088, at *3. The first step requires a court to determine "whether the interpleader action is appropriate, and, if it finds that the action . . . is appropriate, the plaintiff will be discharged from liability." Metro. Life Ins. Co. v. Mitchell, 966 F.Supp.2d 97, 102 (E.D.N.Y. May 13, 2013). "In the second step, the Court adjudicates the claims among the remaining adverse parties." Id. Only the first step is presently before the Court in NY Life's Motion.

"To determine whether interpleader is appropriate . . . a court must assess whether the stakeholder 'legitimately fears multiple [liabilities] directed against a single fund, regardless of the merits of the competing claims.'" Fid. Brokerage Servs., LLC v. Bank of China, 192 F. Supp. 2d 173, 178 (S.D.N.Y. 2002) (quoting Merrill Lynch, Pierce, Fenner & Smith Inc. v. Clemente, No. 98-CV-1756, 2001 WL 11070, at *5 (S.D.N.Y. Jan. 4, 2001)); Wash. Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C., 985 F.2d 677, 679 (2d Cir. 1993) ("[W]hat triggers interpleader is 'a real and reasonable fear of double litigation or vexatious, conflicting claims.'").

NY Life argues that it faces multiple liabilities due to competing claims in connection with Decedent's Plan. Mot. at 2. NY Life makes no claim to the Plan's proceeds; however, it is

unable to determine the lawful beneficiaries set forth in the Designation Form or Preference Affidavit and seeks to be discharged of its obligations arising from the Plan. Id. at 9. Based on the adverse beneficiary forms submitted to NY Life by Hongisto and Heidi Verhagen, Compl. ¶¶ 21, 30, NY Life's fear of multiple liabilities is legitimate. See Sun Life, 2015 WL 1826088, at *4 (finding fear of multiple liabilities legitimate because multiple adverse beneficiary designation forms were submitted). Given that it would be possible for NY Life to face multiple liabilities if it were to distribute the Plan Benefits according to either form, interpleader relief is appropriate in this case.

Although the Opposing Parties have alleged in their Oppositions to the Motion that NY Life failed to follow the Plan's stated procedures, this allegation does not warrant a different conclusion. See Opp'n's at 1 (alleging that NY Life failed to follow CIGNA's procedures when determining the beneficiaries of the Plan). Nothing in the Opposing Parties' answers (or Lynch's for that matter) can be liberally construed as having asserted counterclaims against NY Life. See August 27, 2021, Answers; September 13, 2021, Answer; see generally Torres v. Carry, 800 F. Supp. 2d 577, 582 (S.D.N.Y. 2011) ("The Court is mindful that where . . . a party appears pro se, courts must construe pro se pleadings broadly and interpret them 'to raise the strongest arguments that they suggest.'" (citations omitted)). Furthermore, in the two months since counsel appeared on behalf of the Opposing Parties, Dkt. No. 105, the Opposing Parties have not sought leave from the Court to amend their answers to state a counterclaim against NY Life.

In the past, when courts have denied an interpleader plaintiff's motion to discharge, the interpleaded defendants already raised viable counterclaims against the insurance company that initiated suit. See, e.g., Companion Life Ins. Co. v. Schaffer, 442 F. Supp. 826, 828–29 (S.D.N.Y. Dec. 20, 1977) (denying discharge after a defendant counterclaimed against the

11

insurance company); United of Omaha Life Ins. Co. v. Womack-Rodriguez, 461 F. Supp. 3d 455, 471 (W.D. Tex. May 15, 2020) (denying discharge because "viable counterclaims" were brought against the insurance company); Hauger v. John Hancock Life Ins. Co., (USA), No. 07-CV-1711, 2008 WL 341432, at *1, 3 (M.D. Fla. Feb. 5, 2008) (denying discharge after a defendant brought a counterclaim against the insurance company, raising the possibility that the insurance company "may be independently liable"). Defendants in the instant action have failed to raise any counterclaims against NY Life concerning the Plan Benefits. The allegations the Opposing Parties raised in their Oppositions have not changed that fact.

In light of the foregoing, NY Life and its associated entities are discharged from further liability under the Plan with respect to Decedent's death. See Sun Life, 2015 WL 1826088, at *4; see also Marcus v. Dufour, 796 F.Supp.2d 386, 390 (E.D.N.Y.2011), aff'd sub nom. Marcus v. Haaker, 481 Fed. App'x 19 (2d Cir. 2012) ("Generally, once an interpleader plaintiff has satisfied the jurisdictional requirements of an interpleader claim, the Court will discharge the plaintiff from liability and dismiss him from the case.") (citing New York Life, 700 F.2d at 95); Mitchell, 966 F. Supp. 2d at 103 (finding that once jurisdictional requirements of interpleader claim are satisfied, "'[t]he court should readily grant discharge of the stakeholder, unless it finds that the stakeholder may be independently liable to a claimant or has failed to satisfy the various requirements of interpleader, including, when required, deposit of the stake.'" (alteration in original) (quoting 4 James Wm. Moore et al., Moore's Federal Practice § 23.03[2][a] (3d ed. 2005))).

### C. Injunctive Relief

In its Motion, NY Life also requests the Court to grant injunctive relief to enjoin the parties from instituting or prosecuting any action against NY Life and its associated entities with

respect to the Plan. Mot. at 10. Specifically, NY Life seeks to invoke 28 U.S.C. § 2361, which provides:

> In any civil action of interpleader *under section 1335* of this title, a district court may issue its process for all claimants and enter its order restraining [defendants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. Such process and order shall be returnable at such time as the court or judge thereof directs, and shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found.
>
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make [an] injunction permanent, and make all appropriate orders to enforce its judgment.

28 U.S.C. § 2361 (emphasis added). However, "that section applies only in 'statutory interpleader' actions." Sun Life, 2015 WL 1826088, at *5; see also Geler, 793 F. Supp. at 728 ("Section 2361 only authorizes injunctions against other judicial proceedings in statutory interpleader actions; it does not apply to rule interpleader.") (quoting 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1717 (2d ed. 1986)).

"Rule interpleader actions, like this one, are subject to the Anti-Injunction Act, 28 U.S.C. § 2283." Sun Life, 2015 WL 1826088, at *5 (internal quotations marks omitted). This section provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The Anti-Injunction Act only bars stays of suits currently pending in state court, not injunctions against future actions." Sun Life, 2015 WL 1826088, at *5; see also Dombrowski v. Pfister, 380 U.S. 479, 484 n.2 (1965) ("[28 U.S.C. § 2283] and its predecessors do not preclude injunctions against the institution of state court proceedings, but only bar stays of suits already instituted.") (citations

13

omitted)); Engelman v. Cahn, 425 F.2d 954, 958 (2d Cir.1969) ("[28 U.S.C. § 2283] relates only to pending state court proceedings."); Turner v. LaBelle, 251 F. Supp. 443, 446 (D. Conn. 1966) ("[28 U.S.C. § 2283] only bars stays of suits already instituted.")).

None of the parties has informed the Court of any pending state actions with respect to the Plan Benefits, and the Court "cannot assume from the parties' silence that there are no such actions." Sun Life, 2015 WL 1826088, at *6. "However, to the extent that a state court action concerning the [Plan] is currently pending, an injunction may nevertheless be appropriate to aid this Court's jurisdiction and to effectuate its judgment in this matter, as well as to avoid a needless multiplicity of actions against [NY Life]." Id.

The usual standards for obtaining a permanent injunction must be satisfied in order for NY Life to obtain the injunction it seeks. NY Life must show "(1) irreparable harm . . . and (2) actual success on the merits." Id. (quoting Ognibene v. Parkes, 671 F.3d 174, 182 (2d Cir. 2011)) (quotation marks omitted). NY Life certainly faces the risk of being sued by Defendants in a separate action for recovery of the Plan Benefits. "However, should that happen," NY Life would be able to "rely on" this order discharging it from further liability under the Plan with respect to Decedent's death. Sun Life, 2015 WL 1826088, at *6; see also Metro. Life Ins. Co. v. Little, No. 13-CV-1059, 2013 WL 4495684 (E.D.N.Y. Aug. 17, 2013) (denying anti-suit injunction in interpleader action because court's order discharging life insurance company from further liability under relevant policy "effectively preclude[d] any subsequent litigation"). Even if a judgment were entered against NY Life despite the Court's order, money damages could ultimately compensate any injury to NY Life. See Sun Life, 2015 WL 1826088, at *6; see also JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990) ("[I]t is settled law that when an injury is compensable through money damages there is no irreparable harm.").

Therefore, NY Life has failed to show that it is entitled to injunctive relief because it has not shown irreparable harm. Accordingly, NY Life's request for injunctive relief is denied.

### III. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that NY Life, the Plan, their agents, fiduciaries, employees, representatives, predecessors, successors, and assigns are **DISCHARGED** from and against any and all liability under the Plan with respect to the death of Dreena Verhagen; and it is further

**ORDERED**, that NY Life's request for injunctive relief is **DENIED**; and it is further

**ORDERED**, that NY Life is **DISMISSED with prejudice** from this action; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   December 2, 2022
         Albany, New York

LAWRENCE E. KAHN
United States District Judge